## ADA HAUSER et al., Appellants, v. MARY L. MURRAY et al., Appellants.

**Division Two, March 24, 1914.**

1. **DEFECT OF PARTIES: Children of Grantors.** If heirs to land conveyed their entire interest by deeds whose regularity is not questioned, it is not a defect of parties to fail to join the wives and children of such heirs as parties in the suit to quiet title.

2. **JURY TRIAL: Quieting Title: Equitable Defenses.** Where the defendants in the suit to ascertain and determine the title to land, set up and invoke equitable defenses to defeat the legal title asserted by plaintiffs, and thereby, in effect, request an adjudication of the equities pleaded, the case is triable by the court, and not by a jury, though no affirmative equitable relief is in so many words prayed.

3. **LIMITATIONS: Conveyance in Trust for Self for Life and Remaindermen Thereafter: Life Tenancy of Aliquot Part.** Where a wife, at the time she joined her husband in a conveyance of the land to a trustee for her own sole and separate use during life and to named persons in remainder after her death, held title in fee to eleven forty-eighths of the land and for life in nineteen forty-eighths, the Statute of Limitations did not begin to run against said remainderman, either in favor of her or of her children who with her were in possession, until her death; and the suit to quiet title thereafter brought within the statutory period by one of said remaindermen is not barred. Her interest, in fee and for life, being undivided and severable only by judicial action, which did not occur, her holding as a life tenant, although but partial, was sufficient to prevent the running of the statute under the rule that during the tenure of the life tenant an action by the remaindermen is not authorized. And whether or not said deed operated to convey her interest in trust, the rule would be the same as to the remaindermen named therein.

Hauser v. Murray.

4. ———: ———: **Fraudulent Conveyance.** A judgment of a court of competent jurisdiction setting aside as fraudulent as to creditors, a conveyance made by an insolvent debtor to a trustee by which his wife is to have the land for life, with remainder to certain children, does not affect the rights of said remaindermen or of other children not mentioned in said deed; but, if otherwise valid, the deed conveyed whatever interest the grantor possessed and the Statute of Limitations, while it will not run as to such remaindermen during the life of the wife, will run as to those children not mentioned therein.

5. **SUIT AGAINST NONRESIDENT: Statute of 1855: No Recital That Property Had Been Attached.** In a suit against a nonresident begun in December, 1865, the statute then in force (Sec. 23, chap. 12, vol. 1, p. 246, R. S. 1855) required that orders of publication should not only state the nature and amount of plaintiff's demand or damages claimed, but also that defendant should be notified that his property had been attached; and if it failed to notify him that his property had been attached, or to contain words of similar import, the court acquired no jurisdiction of the suit, and its judgment rendered in pursuance thereof was entirely void, and though it may seem to be a good judgment at common law a sale and deed thereunder conveyed no title, and, being entirely void, their invalidity may be shown in a collateral suit. In such case the title remained in the defendant and upon his death intestate passed to his heirs at law.

6. **DEED: Validity: Acknowledgment: Wife's Individual Estate.** A deed made in 1870, by which a husband and wife undertook to convey land, of which she was the owner of eleven forty-eighths in fee and he claimed to be the owner of other aliquot parts, to a trustee for her separate use for life, with remainder to certain children, is set out in the statement, and is *held* to be valid in every respect, both as to the estate purported to be granted and the wife's separate acknowledgment, under Sec. 2, chap. 109, p. 444, G. S. 1865.

7. ———: ———: **Consideration: Property Belonging to Estate: Possession as Administrator: Trust Estate.** Possession, prior to the Married Woman's Act of 1875, by a husband as executor or administrator of personal property of which the wife was the equitable owner, and not in the exercise of his marital rights, did not constitute such a reduction to his possession as to vest the ownership of the property in him, his holding being in the capacity of a trustee; and hence where he exchanged, for the interest of an heir to the land in suit, two horses belonging to an estate for which he was administrator, and in all of which his wife had a life estate with remainder in her bodily heirs, created by the will of another, her brother,

the husband held the title to the land so conveyed to him as trustee for his said wife and her bodily heirs, and his conveyance of the same did not affect their equitable title.

8. **PARTITION: Estoppel.** The participation by the life tenant with the heirs and the remaindermen in an *ex parte* partition suit in which a part of the land was set off to an insane heir, in no way affected her life estate in the rest, created by a prior deed to a trustee in which she and her husband joined by which her estate in fee in an aliquot part of the land was converted into a life estate in her with remainder to certain children of her husband.

9. **CONTINGENT REMAINDER.** A devise to Elizabeth and her bodily heirs creates a contingent remainder in the bodily heirs, and such a remainder is not descendible. Hence, upon the death of Elizabeth's son without issue prior to her death the interest he would have received had he survived her went, upon her death, to swell the interests of those of her bodily heirs who survived her.

Appeal from Ray Circuit Court.—*Hon. Francis H. Trimble,* Judge.

REVERSED AND REMANDED (*with directions*).

*C. T. Garner & Son* and *James L. Farris* for plaintiff-appellants.

(1) The object of Sec. 650, R. S. 1899, now Sec. 2535, R. S. 1909, is not to determine title as against the whole world, as in proceedings *in rem,* but is to determine issues between adversary parties and their respective titles. Dixon v. Hunter, 204 Mo. 390. It was consequently unnecessary, therefore, to have Mrs. Moore made a party to this suit. Besides, no such objection was made in the trial below. She has never asserted in any court claim to this property. (2) A jury was properly denied in view of the equitable defenses pleaded in defendant's answer. Pleading the thirty-year Statute of Limitation in this answer, and asking judgment as to the effect of the deed made by John H. Smith and wife to Quesenberry in 1870, presents also, and in addition to the other equitable de-

fenses, a peculiar province for a court of equity. Crocker v. Cutting, 53 N. E. 158; Stone v. Perkins, 217 Mo. 601; Lumber Co. v. Jones, 220 Mo. 197; Shields v. Johnson, 79 Pac. 391; McLeod v. Lloyd, 71 Pac. 795; R. S. 1909, sec. 2535. (3) It was unnecessary for defendant in its answer to ask for equitable relief, since it would not have been granted, except in results. In proceedings of this character, under Sec. 650, R. S. 1899, the court had no power to do more than to ascertain and determine the title and interest of the parties to the suit. Powell v. Crow, 204 Mo. 481. (4) Tenant in remainder cannot bring suit for possession, until death of life tenant. So the Statute of Limitations cannot and does not begin to run until after the death of life tenant. Hall v. French, 165 Mo. 430; Reed v. Lowe, 163 Mo. 535; Milton v. Fitch, 125 Mo. 290; Keith v. Keith, 80 Mo. 125; Bradley v. Railroad, 91 Mo. 498. (5) The sheriff's deed made March 10, 1868, was valid and conveyed the title, estate and interest of John Gunnell to John H. Smith. The statute relied upon by appellant, statute of 1865, did not go into effect until August 1, 1866. The statute of 1855 did not require, in attachment suits, that a notice *lis pendens,* should be filed in the recorder's office. This deed had been recorded more than ten years before the institution of this suit, and was therefore, admissible in evidence without further proof. It is regular upon its face and valid. Secs. 2231, 2232, 2233, R. S. 1909; R. S. 1899, sec. 3123; R. S. 1909, sec. 6318; Hode v. Hubb, 94 Mo. 497; Howard v. Johnson, 93 Mo. 208; Wells v. Pressey, 105 Mo. 181. Even if valid or defective, limitation started to run while John H. Smith claimed to be the owner, and while he and his wife occupied the premises, jointly, and this adverse possession was continued through the trustee until the death of Elizabeth B. Smith, thus completely barring, as against all the world, and in favor of the grantees in said deed, all right or claim to such in-

terest. G. S. 1865; R. S. 1855, sec. 22, p. 244; Stanton v. Bashert, 104 Mo. 398. (6) The deed dated March 5, 1870, made by John H. Smith and Elizabeth B. Smith, his wife, to David H. Quesenberry, trustee, conveyed all the interest they both had in fee in said lands to David H. Quesenberry, and subject to the provisions of said deed. Perkins v. Carter, 20 Mo. 465; Chauvin v. Lowne, 23 Mo. 223; Miller v. Powell, 53 Mo. 252; Burnett v. McCulley, 78 Mo. 688; Long v. Timmons, 107 Mo. 519. (7) The trustee in the deed made by John H. Smith and wife being vested with legal title, and the guardian of Robert S. Gunnell, insane, and Mrs. Elizabeth B. Smith, life tenant, evidently had the right, *ex parte* to apply for partition, and division of the lands. This did not affect the interest of Harvey Smith or any of the parties to the suit. It merely divided and set off to Robert S. Gunnell, his interest. The parties were none the loser by this action, and they could have agreed on a division of the lands, perhaps, without bringing suit. This judgment shows further that Elizabeth B. Smith recognized the attitude of the trustee and his authority to join her in the action. The question of estoppel does not arise, and therefore, it is unnecessary to discuss it. (8) The adverse possession started by the purchase by John H. Smith of the interest of John C. Gunnell, and all his rights and equities therein passed to the trustee, and could only inure to the benefit of the parties therein named as grantees. The trustee was as much for respondent as for the children of Elizabeth B. Smith, and even if he had desired to have continued the limitation in favor of these parties to the exclusion of plaintiffs it would have been impossible to have so done. The trustee must act in good faith to all the parties in interest, and alike for each. The visible possession of the trustee is found in the enjoyment of the life tenant, and it is to the trustee to look to the title and to see that it is not lost or diminished

by any neglect of his. (9) While the testimony of oral declarations of deceased persons are admissible in certain instances, yet the grantor cannot, by subsequent oral declarations impeach his action. It was error to admit the testimony of witnesses as to declarations made by John H. Smith after delivering his deed to Quesenberry. With this rule invoked, there is not the slightest evidence that any of the horses belonging to the estate of Nathaniel Gunnell were traded to William H. Gunnell; they may have at one time belonged to the estate, but afterwards bought by Mr. Smith, and then in part turned over to William H. Gunnell. If John H. Smith purchased horses from the estate at the administrator's sale, and afterwards traded these horses for the interest in question, equity would not sleuth, from this state of facts alone. Equity could only follow the property in which the estate had never in fact parted with its title.

*Lavelock & Kirkpatrick* for defendant-appellants.

(1) Under the second count of the petition, there was an absence of necessary parties to a complete determination of the issues raised. Plaintiffs were not entitled to the relief demanded, when some of the persons in interest, as shown by the evidence, were not before the court. Sec. 1733, R. S. 1909; 30 Cyc. 113, sub. 2, note 17; 15 Ency. Pl. & Pr. 611-2; Estes v. Nell, 108 Mo. 177; Hiles v. Rule, 121 Mo. 256; Johnson v. Johnson, 170 Mo. 57; Graton v. Land and Lumber Co., 189 Mo. 332; Stewart v. Land Co., 20 Mo. 289; Shields v. Barrow, 15 U. S. (L. Ed.) 160; Barney v. Baltimore City, 6 Wall. (U. S.) 285. (2) The suit, under the second count of the petition, being an action at law, was triable by a jury, and a jury should have been granted, if requested by either plaintiffs or defendants. The defendants having demanded a jury, the court committed error in its refusal of defendants' request. Secs. 1968, 2535, R. S. 1909; Cox v. Moss, 53

Mo. 432; Briggs v. Railroad, 111 Mo. 168; Benoist v. Thomas, 121 Mo. 660; Withers v. Railroad, 226 Mo. 373; Frowein v. Poage, 231 Mo. 92; Kansas City v. Smith, 238 Mo. 334; Gillespie v. Gouly, 120 Cal. 515; Tabor v. Cook, 15 Mich. 322. (3) Pleading equitable defenses in the answer, in the absence of a prayer for affirmative relief, did not convert the action at law into a suit in equity, neither did it deprive defendants of the right to a jury trial. The trial court refused the defendants' request for a jury. This was error. 24 Cyc. 125, sub. 3, (b), notes 72-4; Sebree v. Patterson, 92 Mo. 458; Trust Co. v. Nathan, 175 Mo. 42; Seiberling v. Tipton, 113 Mo. 381; Wendover v. Baker, 121 Mo. 273; Laswell v. Handle Co., 147 Mo. App. 541; Shaffer v. Detie, 191 Mo. 392; Bouton v. Pippin, 192 Mo. 469; Cobe v. Lovan, 193 Mo. 252; Pitts v. Pitts, 201 Mo. 358; Bigham v. Tinsley, 149 Mo. App. 477; Withers v. Railroad, 226 Mo. 396; Kansas City v. Smith, 238 Mo. 334. (4) The action of plaintiffs, under the second count of the petition, was barred by the Statute of Limitation before the suit was commenced, whether a new cause of action was created by this statute, or merely a legal remedy was provided in lieu of an existing ground for equitable relief. Sec. 1888, R. S. 1909; Hoesler v. Sammelman, 101 Mo. 623; Haarstick v. Gabriel, 200 Mo. 244; Stark v. Zehnder, 204 Mo. 451. (5) If the deed from William H. Gunnell to John H. Smith, of date Oct. 17, 1876, conveyed any interest, Mrs. Smith and her bodily heirs were, by reason of being the owners of the property exchanged for this interest, the equitable owners of whatever interest or estate was conveyed by such deed, and Mary L. Murray was not divested of her estate therein by the voluntary deed of John H. Smith, of date March 5, 1870. Plaintiffs were not purchasers for value, and Mary L. Murray was not precluded from asserting title by virtue of this deed. 15 Am. & Eng. Ency. Law (2 Ed.), pp. 936-7; 23, Ib., p. 487; 28 Ib., pp. 1108, 1113;

21 Cyc. 1182-3, sub. (B), note 90; 1382-3, sub. V, f. note; Rogers on Dom. Rel., sec. 155, p. 115; 1 Bishop on Married Women, sec. 119; Tennison v. Tennison, 46 Mo. 82; Young v. Scofield, 132 Mo. 660; Boyton v. Miller, 144 Mo. 687; Reed v. Nicholson, 189 Mo. 407. (6) The sheriff's deed, dated March 10, 1868 to John H. Smith, under judgment rendered September 6, 1867, was void and no title was thereby conveyed. The order of publication did not state that defendant's property had been attached. Sec. 23, R. S. 1855, p. 246; Durossett v. Hale, 38 Mo. 348. No abstract of the attachment levied was filed in the recorder's office of Ray county as required by law. Sec. 20, chap. 141, G. S. 1865; Stanton v. Boschert, 104 Mo. 399; Bryant v. Duffey, 128 Mo. 20. (7) The deed executed March 5, 1870, by John H. Smith and wife to David H. Quesenberry, trustee, was not intended to convey and did not convey the estate held for life or in fee by Elizabeth B. Smith in the land described. The question of whose deed was intended, and what estate it was intended to convey, should and must be determined from the entire instrument, the understanding of the makers, the situation of the parties and the object and purposes for making the deed, and these may be evidenced by the declarations and conduct of the parties thereto. The rights of no innocent purchasers were involved to prevent the full and free operation of this well recognized rule of construction. Long v. Timms, 107 Mo. 519; Walton v. Drumtra, 152 Mo. 497; Utter v. Sideman, 170 Mo. 294; Musgrove v. Hendricks, 183 Mo. 308; Dooley v. Greening, 201 Mo. 352; Waldermeyer v. Leobig, 222 Mo. 551; Lane v. Doolick, 6 McLean (Ill.), 200. (8) The defendants were not estopped by the recitals in the *ex parte* judgment in partition in the circuit court of Ray county, in 1877, setting off the 52 acres to Robert E. Gunnell. The proceedings were irregular, if not void: (1) There was no service or

personal appearance; (2) there were no adversary parties—the proceeding being *ex parte*; and (3) there was no evidence that Robert E. Gunnell had been adjudged insane, or that the minors had been served with process, or that guardian *ad litem* was legally appointed, therefore the judgment was not *res adjudicata.* and did not constitute estoppel, and without some proof of actual knowledge by Mrs. Smith or Mrs. Murray of the recitals in the judgment, it was not admissible in evidence to show recognition or acquiescence by them of the construction of the deed of March 5, 1870, as claimed by plaintiffs. Van Fleet on Former Adjudications, sec. 256, p. 572; Biglow on Estoppel, p. 570; McMahan v. Geiger, 73 Mo. 145; Bank v. Bartle, 114 Mo. 281; Scrutchfield v. Santer, 119 Mo. 622; O'Rourke v. Railroad, 142 Mo. 353; Kinney v. McVoy, 206 Mo. 58. (9) Whatever right or estate, if any, acquired by adverse possession, enured to the benefit of Elizabeth B. Smith and Mary L. Murray. Hutson v. Hutson, 139 Mo. 236; Dunlap v. Griffith, 146 Mo. 294; Misenheimer v. Amos, 221 Mo. 371. (10) Testimony of oral declarations of deceased persons is admissible, although it will be received with caution by courts. Greenleaf on Evid. (14 Ed.), sec. 200, p. 261; 2 Chamberlayne on Evid., sec. 1385, p. 1747; Cornet v. Bertelsman, 61 Mo. 127; Kinney v. Murray, 170 Mo. 706; Rosenwald v. Middlebrook, 188 Mo. 94; Collin v. Harrell, 219 Mo. 306.

WALKER, P. J.—*Preliminary.* Plaintiffs Ada Hauser, David L. and Virginia C. Smith brought suit against defendants Mary L. Murray and her husband Guy R. Murray, in the circuit court of Ray county, under section 650, Revised Statutes 1899, now section 2535, Revised Statutes 1909, to ascertain and determine the estate, title and interest of the parties named, to the following described land in said county, viz.: the southeast quarter and the east half of the southwest

quarter, except fifty-two acres off of the west side of said last described tract, of section seventeen; the northwest quarter of the northeast quarter, and the northeast quarter of the northwest quarter of section twenty, all in township fifty-two of range twenty-seven, containing two hundred and sixty-eight acres, more or less.

*The Pleadings.* The petition is in the usual form and alleges that the defendants are in the possession of the real estate in question and claim to be the owners of same adversely to the plaintiffs. Wherefore, plaintiffs, under the provisions of said section 650, pray the court to ascertain and determine the title, estate and interest of plaintiffs and defendants respectively in and to said real estate and to adjudge and define the estate, title and interest of said parties hereto, severally in and to said premises.

The answer admits possession and denies generally all other allegations; pleads the ten-year Statute of Limitations, and more than forty years' adverse possession of the premises, with payment of taxes and the making of valuable and permanent improvements thereon next before the commencement of this suit; that Mary L. Murray, defendant, and those under whom she claims, have had possession of said lands ever since title to same emanated from the Government more than seventy-five years next before the commencement of this suit; that the pretended conveyance of one Wm. H. Gunnell of a certain interest in said lands to one John H. Smith, through whom plaintiffs claim title, was paid for with assets and property held by him in trust for Elizabeth B. Smith through whom defendants claim title and that whatever interest said transfer purported to convey to said John H. Smith was held by him in trust for said Elizabeth B. Smith and her bodily heirs, and that said Elizabeth B. Smith died intestate in 1907 leaving the defendant Mary L. Murray her only child and bodily heir her surviving,

and that said Mary L. is the equitable owner in fee of whatever share and estate, if any, was acquired by or through said transfer. Defendants have no knowledge as to whether said Wm. H. Gunnell was an heir of Wm. M. Gunnell, the common source of title, and ask that plaintiffs be held to strict proof in regard thereto; that if said Wm. H. Gunnell was an heir of said Wm. M. Gunnell, whatever share or estate was transferred, if any, by Wm. H. Gunnell to John H. Smith, inured to the benefit of Elizabeth B. Smith and her bodily heirs, and that defendant Mary L. Murray as such bodily heir is the equitable owner thereof; that defendants are informed that plaintiffs claim some share, interest or estate in and to said lands through a pretended sheriff's deed to said John H. Smith, that said deed was based upon a sale under an attachment proceeding in which the sheriff of Ray county undertook to sell the interest and estate in a part of said lands of John C. Gunnell, a brother and heir of Wm. M. Gunnell, under and by virtue of said proceeding, which was commenced by publication in the circuit court of said county by John H. Smith against the property of said John C. Gunnell, a non-resident of this State; that the judgment in said suit was void; that said John C. Gunnell was not served with process, did not appear, and the court did not have or obtain jurisdiction over his property because no abstract of attachment was filed in the recorder's office of said county showing the names of the parties to the suit, the amount of the debt, the date of the levy and the description of the real estate attached and levied upon as required by statute, and that said proceeding was inoperative and void and no title passed thereby; and if any right, title or interest was acquired by said deed it inured to said Elizabeth B. Smith and the heirs of her body, for the reason that whatever consideration was or had been paid therefor was of the assets, property and proceeds of the estate of Nathaniel H. Gun-

nell, Jr., one of the heirs of Wm. M. Gunnell, which estate said John H. Smith then and there had and held in the course of administration and which same or the property thereof had been devised to said Elizabeth B. Smith and her bodily heirs, and the defendant Mary L. Murray as her only bodily heir is now the equitable owner thereof; that defendants are informed that plaintiffs claim an interest in said lands under and by virtue of a pretended conveyance of same by said John H. Smith to one David H. Quesenberry as trustee for his wife Elizabeth B. Smith for life, with remainder to his minor children Ada, Harvey and Mary L. Smith; that said John H. Smith at the time of said conveyance was insolvent and unable to pay his debts and fearing and believing that the share or interest in said lands in his name acquired as aforesaid, but which he in fact held only as trustee, might be subjected by his creditors to the payment of his debts, said transfer was made to secure said property to his wife and children and for the fraudulent purpose of defeating the claims of creditors, yet without any except a nominal consideration, or, in fact, with no consideration; that said voluntary conveyance could not and did not operate to divest Mary L. Murray of her equitable interest in said lands, which interest is here set up and pleaded as a defense to this action; and defendants say that plaintiffs ought not by reason of said pretended conveyance to have and maintain this action, but should be estopped and precluded from having or maintaining any claim or interest in said lands; that said Elizabeth B. Smith owned more than one undivided one-half of said lands for her life, remainder in fee to her bodily heirs, and claimed the residue in fee by deed, devise, inheritance and possession, and desirous of improving same and rendering it more valuable for her two children Mary L. Murray and Harvey Smith, in the spring of 1889, with her consent said children commenced to improve same according to a parol division thereof by her, the said

Mary L. Murray taking the southwest quarter of section seventeen, township fifty-two, range twenty-seven, and said Harvey Smith the remaining one hundred and eight acres, so that each might improve and cultivate the land as desired; that at the time of said parol division only six or eight acres of Mary L. Murray's part of one hundred and sixty acres was in cultivation and only thirty acres of Harvey Smith's one hundred and eight acres; that said Harvey died in 1894; that prior to his death defendants had cleared and put in cultivation one hundred of the one hundred and sixty acres, planted an orchard of one hundred and fifty trees, expended one hundred and seventy-five to two hundred dollars for ditching and draining, built a tenant house and stable, and one and a half miles of fence on said premises, and had otherwise improved same; that of the one-hundred-and-eight-acre tract all had been put in cultivation prior to Harvey's death, except about twenty acres; that all of such labor, improvements and expense were done and made by defendants and said Harvey Smith, relying on the fact that plaintiffs made no claim to said lands; that after the death of said Harvey Smith in November, 1894, defendant Mary L. Murray by and with the consent of her mother, Elizabeth B. Smith, made valuable and lasting improvements on said land, putting the remainder, except about fifteen of said one hundred and sixty acres, in cultivation and by building barns and cow stables thereon, all of which was done under the claim of ownership, subject, however, to the right of said Elizabeth B. Smith; that defendants and Harvey Smith did the work and made the improvements aforesaid, believing that they and their mother had and held title to said lands and without any knowledge or information that plaintiffs had or claimed any right, title or interest therein; that additional improvements were made on said land by defendants after the death of said Harvey Smith, without any knowledge or infor-

mation that plaintiffs had or claimed any right, title or interest in same, defendants being and continuing in possession of said lands at all times, either by themselves or said Elizabeth B. Smith as owners, since 1868; that the aggregate value of the improvements so made and placed thereon by defendants is two thousand dollars; that defendants would not have made said improvements but for their belief aforesaid; that plaintiffs had full knowledge of the making of said improvements by defendants at the time same were made, and plaintiffs knew at the time that same were placed thereon by defendants under the claim of ownership as aforesaid, and that the value of said lands were being thereby enhanced, but that plaintiffs made no claim to any interest or share in same; that by plaintiffs' refraining from making known their claim to any interest in said lands, defendants were induced to rely on their own title and to believe that plaintiffs had no claim thereto, and that they made such improvements in good faith, believing that said Elizabeth B. Smith and her bodily heirs were the legal and equitable owners of said premises; wherefore defendants say that plaintiffs ought to be estopped from setting up and asserting any claim to said real estate by reason of the conveyances aforesaid or otherwise.

The reply is a general denial.

Defendants demanded a jury which was refused.

Upon a trial before the court there was a finding as to the title and interest of the parties, not necessary to be set out here, but which will be discussed at length in the opinion. From this finding there were cross appeals.

The plaintiffs claim title through their father John Henry Smith, on account of interests alleged to have been acquired by him in the purchase of undivided portions of the land in question, and Ada Hauser claims in addition under a certain deed made March 5, 1870, by John Henry Smith and his wife Elizabeth B. to David

H. Quesenberry, as trustee. More particularly, the basis for plaintiffs' claim rests, first, upon an attachment proceeding by which John Henry Smith, their father, is alleged to have acquired at an execution sale under said proceeding, the interest of John C. Gunnell in said land; second, upon a conveyance to John Henry Smith by Wm. H. Gunnell, of his father James G. Gunnell's interest in the land; and, third, as to Ada alone, upon the deed of March 5, 1870, above referred to.

The defendant Mary L. Murray claims title to the land in question by inheritance, and as the sole surviving bodily heir of her mother Elizabeth B. Smith, under the terms· of the will of Nathaniel H. Gunnell, Jr.

*The Facts.* The origin and devolution of the title to the land in question is disclosed in the following statement:

Wm. M. Gunnell, who is the common source of title, died a bachelor and intestate in Ray county, in December, 1857, seized in fee of four hundred acres of land described as follows: The east half of the southwest quarter and the southeast quarter of section seventeen; the west half of the northeast quarter of section twenty, all in township fifty-two, range twenty-seven, the land in controversy being, as is disclosed by the Government subdivisions, a part of this tract.

Wm. M. Gunnell left surviving him his father, Nathaniel H., Sr., five brothers, viz.: John C., James N., Thomas P., Nathaniel H., Jr., and Robert E., and two sisters, Sarah J. and Elizabeth B.

In 1857, a short time after William M. Gunnell's death, Nathaniel H., Sr., conveyed his interest in William M.'s estate to Sarah J. and Elizabeth B. In 1858, Thomas P. Gunnell conveyed his interest in said estate to Sarah J., Elizabeth B. and Nathaniel H., Jr.; Sarah J. died in 1858, a maid and testate, after devising her interest in said estate to Nathaniel H., Jr. In 1859,

Nathaniel H., Jr., died, a bachelor and testate, devising his estate, personal and real, to Elizabeth B. and her bodily heirs. After these deeds and devises the title to the land in question was held as follows: In John C., one-eighth; in James N., one-eighth; in Robert E., one-eighth; in Elizabeth B., eleven forty-eighths in fee and nineteen forty-eighths for life, remainder to her bodily heirs.

In January, 1858, Elizabeth B. married John Henry Smith. Of this marriage there were born two children, Harvey and Mary L., the latter being one of the defendants and now intermarried with the other defendant, Guy R. Murray. Harvey died a bachelor and intestate in 1894. John Henry Smith had formerly been married twice, the plaintiffs being his children by such marriages.

John Henry Smith at the time of his marriage to Elizabeth B. Gunnell, lived on a farm owned by him, several miles distant from the Gunnell land or farm, as it will at times be designated. The small portion of the latter improved and under cultivation, was, after the death of Nathaniel H., Jr., in 1859, taken charge of by John Henry Smith, and one of his sons by a former marriage put in possession of same. This son and others occupied and cultivated the land until 1868, when John H., who had become hopelessly insolvent, his farm and stock being sold to satisfy his debts, removed to the Gunnell farm. He lived there with his wife and smaller children until 1873, or for a period of about five years, when he went to live with one of his sons by a former marriage, with whom he remained until his death in January, 1874. There was no estrangement, and his daughter, Mrs. Murray, states that his age and incapacity determined his course, as he could do nothing to help her mother, Elizabeth B. During the five years referred to, he was utterly impecunious, and from reasonable deductions made from

all the testimony he had been so for a number of years before the sale of his own farm and the stock and other personal property thereon to satisfy the demands of his creditors. At different times prior to and during this period he stated that he was bankrupt and "was living on his wife's place." Workmen and others with whom he had dealings, unable to collect amounts due them from him, reduced their claims, in small sums ranging from forty dollars to three hundred dollars, to judgments which were not satisfied at his death. He declined to exercise any authority over improvements made on the Gunnell land and the expenditures therefor were made by his wife and under her direction. At one time a loan of five hundred dollars was made to him and the Gunnell land mortgaged by him and his wife to secure the payment of same, and it was subsequently paid. This testimony as to his pecuniary condition during the last twelve or fifteen years of his life is in no way determinative of the title or interest of the parties hereto, but it serves well to guide the way to the interpretation of other transactions of said Smith in regard to the Gunnell land, and hence, as will appear hereafter, it is not irrelevant.

Nathaniel H. Gunnell, Jr., the last of the name who occupied and cultivated the Gunnell land, left at his death on the premises some four or five horses and colts, and a good many cattle, including five or six milch cows. John Henry Smith took charge of this property, removing a portion of it a few months after Nathaniel's death, to his, Smith's, farm, and allowing a portion to remain on the Gunnell farm. In 1862, Smith became the administrator *de bonis non* of Nathaniel's estate. There had been under the executor of this estate a sale of a part of Nathaniel's stock, Smith becoming a purchaser in the amount of about $573, or to the extent of about two-thirds of the reported sale. When the executor resigned and Smith

was appointed to succeed him, he (the executor) took
credit for this amount, which had not been paid, and
was not paid by Smith; the latter never made but one
annual settlement and never finally settled the estate.
So far as the record discloses, at the time of Nathaniel,
Jr.'s, death and during Smith's administration, the
latter had no other property than that held by him as
administrator.   Only a small portion of Nathaniel's
stock was sold, the remainder, unless disposed of by
Smith, other than by public sale, remained in his pos-
session.   The testimony which is clear, considering the
lapse of time, tends to show that a portion of this
stock remained on the Gunnell farm, and was from
time to time disposed of by Smith.   The importance
of this feature of the case will appear in connection
with a review of the evidence in regard to the deter-
mination of the interest of John H. Smith acquired
from Wm. H. Gunnell.

Relative to the interest of John C. Gunnell pur-
chased by John Henry Smith at sheriff's sale, the fol-
lowing preliminary facts are pertinent:   John C. Gun-
nell several years before his brother William M.'s
death, went to California in early manhood, sometime
between 1850 and 1855.   Nothing was heard from him
or of him for many years and he was believed to be
dead, until sometime in the 80's, not later, one wit-
ness says, than 1888 or 1889, when he returned, and
thereafter lived with his sister Elizabeth B., on the
Gunnell farm, until 1900, when he died a bachelor and
intestate.   In December, 1865, more than ten years
after John C. Gunnell had gone to California, John
Henry Smith brought suit, by publication, in the cir-
cuit court of Ray county, alleging that said John C.
Gunnell was indebted to him in the sum of $480.   The
record entries in regard to this matter are material
in determining the interest acquired by John Henry
Smith under this proceeding, and we insert them in
their order:

## Order of Publication.

John H. Smith v. John Gunnell.

Now at this day comes the plaintiff by his attorney and files his petition in the above entitled cause, and it being averred in said petition that the defendant is not a resident of the State of Missouri, it is therefore ordered by the clerk of the circuit court of the county of Ray in the State of Missouri, that he be notified of the commencement of this suit by publication in "Missouri Freeman" a weekly newspaper printed and published in the county of Ray and State of Missouri of the folowing to-wit: To John Gunnell, the aforesaid defendant, you are hereby notified that the said plaintiff has commenced his action against you, the object and general nature of his petition being to recover against you, the sum of four hundred and eighty dollars. The said plaintiff avers in his said petition that on or about the 16th day of August, 1865, the said defendant transferred to him, the said plaintiff, in writing, all his interest and claims on defendant among which there was a claim of four hundred and eighty dollars, which was for money loaned by said William H. Gunnell to said defendant, plaintiff further alleges in said petition that, by virtue of said assignment and transfer, he became entitled to the aforesaid sum of four hundred and eighty dollars. These are therefore to notify you that you are required to be and appear in said court, at the courthouse in the city of Richmond, in said county of Ray, State of Missouri, on the 1st day of the next term of said court, it being the 5th day of March, A. D. 1866, and answer the said petition or the same will be taken as confessed and your property sold to satisfy the same.

## Judgment by Default.

March Term, 1866.

Now at this day comes the plaintiff aforesaid, by his attorney and the defendant comes not, nor does he demur to or answer the plaintiff's petition, whereby the said action against him herein remains undefended, and plaintiff shows to the court here proof of publication notifying the defendant of the commencement of this suit against him, which is approved and ordered filed, hereupon, on motion of the plaintiff an interlocutory judgment by default is ordered entered against said defendant in the premises, and it is considered by the court that the allegations contained in said petition be taken as confessed, and unless defendant shall appear in this court at the next term thereof, and show just cause for setting aside said judgment, the same will then be made final, and this cause is continued."

### Continuance.

September (October) Term, 1866.

Now at this day comes the plaintiff aforesaid, by his attorney, and on his application this cause is by order of the court continued at his cost. It is therefore considered by the court that the defendant recover against said plaintiff his costs about this continuance expended, and it is ordered that execution issue therefor.

### Judgment.

September Term, 1867.

Now at this day comes the plaintiff aforesaid by his attorney, and the defendant comes not, but makes default. It is therefore considered by the court that the allegations in said petition be taken as confessed, whereupon the court proceeds to inquire into the damages sustained by the plaintiff, and finds the same to be five hundred and fifty dollars and twenty cents, and it is considered by the court that the plaintiff recover against said defendant said sum so found to be due plaintiff as aforesaid, together with all his costs in this behalf expended, and that the same be levied of, and limited to the property attached, to-wit: All defendant's interest, both divided and undivided, in the following real estate situate in the county of Ray and State of Missouri, to-wit: The SE¼ and the E½ of the SW¼ and the W½ of the NE¼ and the E½ of the NW¼ all in section 17, township 52, and range 27, and that execution issue accordingly.

There was no statement in the order of publication, proof of same, or in the interlocutory judgment that any property had been attached, no notice of the abstract of attachment was filed in the case, and no return or other writing signed by the sheriff was filed stating that he had levied the writ on any property. The judgment properly described the land in section seventeen, but improperly included two hundred additional acres in said section, and did not describe the land in section twenty. Under this judgment the land described was sold by the sheriff in March, 1868, and purchased by John Henry Smith, to whom a deed was made in due form by the sheriff.

James N. Gunnell, whose interest it is claimed was purchased by John Henry Smith, also left Ray county in early manhood, going to Kentucky where he married, and subsequently removed to Scotland county,

Missouri. After several years' residence there, he left his wife and children, going to Virginia, where it is indefinitely shown that he died. A mass of testimony, all hearsay, and much wholly irrelevant, tends to show that Wm. H. Gunnell, who resided in Scotland county, was in 1865 the sole surviving heir of his father, James N. Gunnell, and, if so, entitled to a one-eighth interest in the Gunnell land. In 1865 a deed was made by Wm. H. Gunnell to John Henry Smith, conveying an undivided one-seventh of one-eighth of the land in question. This deed, except that it was offered in evidence, was ignored by the parties at the trial. In October, 1866, said Wm. H. Gunnell and his wife, for a consideration named in the deed of $600, three hundred of which was stated to have been paid, conveyed the Gunnell land to John Henry Smith, the consideration in fact (as shown by many circumstances and John Henry Smith's statement to one of the witnesses named Joseph T. Duvall) being two horses belonging to the estate of Nathaniel H. Gunnell, Jr., the testimony in regard thereto being as follows:

"Q. In talking about the farm whom did he (John H. Smith) say it belonged to? A. He said it belonged to his wife.

"Q. Can you give the substance of any conversation he had with you? A. Here in front of the courthouse on one occasion Jim Johnson and I was talking and Mr. Smith came up; I asked him if he was going home; he said he was going pretty soon; he got to talking about some trade he had with somebody about some stock, and got to speaking of the farm, and he just remarked to me, he says, 'Joe, the war has ruined me and made me a bankrupt and I am now living on my wife's estate.'

"Q. What else did he say about trading some of Nathaniel Gunnell's stock? A. He told me after Nathaniel's death he took that stock and traded it for land.

That is how that come up, said he owned nothing now, said he was a bankrupt.

"Q. What did he say he traded it for? A. He turned it over to the children.

"Q. Why? A. Said he was a bankrupt and could not hold anything himself.

"By the Court: Q. I understand you to say he took Nat's stock and traded it for some land? A. Yes, and turned the land over to the children.

"Q. What children? A. He didn't say, he said the children."

The witness Duvall's statement as to his conversation with John H. Smith in regard to the consideration paid to Wm. H. Gunnell for his interest in the Gunnell lands, finds confirmation in the deposition of Joseph Childress, who in detailing a conversation had with said Wm. H. Gunnell, says: "He" [William H.] "went over there and brought back the stock with him and told me that it was a payment on this land," and the deposition of Sarah A. Gunnell, the widow of Wm. H., in regard to the same matter, in which she says: "I remember of him bringing two horses."

On March 5, 1870, John Henry Smith and his wife Elizabeth B. made and executed to David H. Quesenberry, as trustee, the following deed:

> Know all men of these presents that we, John H. Smith and Elizabeth B. Smith, his wife, of the county of Ray in the State of Missouri for and in consideration of the natural love and affection as well as in consideration of the sum of one dollar to us in hand paid by David H. Quesenberry, trustee for the sole and separate use and benefit of said Elizabeth B. Smith during the period of her natural life, and at her death the same to pass to and vest in fee simple in her two children, Mary L. Smith and Harvey Smith, and the daughter of said Henry Smith by a former wife, Ada Smith, equally, do by these presents, grant, bargain and sell unto the said David H. Quesenberry, trustee as aforesaid, the following real estate situate in the county of Ray in the State of Missouri, to-wit: The west half of the southeast quarter of section seventeen (17), the east half of the southwest quarter of said section

Hauser v. Murray.

seventeen (17) and the east half of the southeast quarter of said section seventeen (17), the west half of the northeast quarter of section twenty (20), and the east half of the northwest quarter of said section twenty (20), all in township fifty-two (52) of range twenty-seven (27), with the appurtenances.

To have and to hold the premises aforesaid unto him, the said trustee for the uses and purposes aforesaid, his successors and assigns forever. It is hereby understood and agreed by and between the parties hereto that said trustee shall have full power and authority to sell or in any other way dispose of said real estate during the lifetime of the said Elizabeth B. Smith, by the approbation and request of her, the said Elizabeth B. Smith, which approbation and request shall be shown by her joining in the deed of conveyance or other instrument by which said real estate may be conveyed or affected, and the proceeds of such sale or other disposition of said real estate shall be appropriated by said trustee for the benefit of the persons aforesaid, as may be directed, by said Elizabeth B. Smith. It is the intention and understanding of the parties hereto that if said real estate is sold and conveyed according to the power herein given in the lifetime of the said Elizabeth B. Smith, that the estate therein of the said children is thereby forever defeated, and the purchaser takes a fee simple title to said real estate.

I, the said John H. Smith hereby covenanting to and with said trustee, his successors and assigns, for myself, my heirs, executors and administrators to warrant and defend the title to the premises aforesaid against the claims of all persons whatsoever.

In witness whereof, we hereto subscribe our names and affix our seals this 5th day of March, 1870.

John H. Smith      (Seal).
Elizabeth B. Smith (Seal).

The acknowledgment, omitting the caption and the jurat of the notary, is as follows:

Be it remembered that on this 5th day of March, A. D. 1870, before the undersigned, a notary public, within and for the county of Ray aforesaid, personally came John H. Smith and Elizabeth B. Smith, his wife, who are personally known to me to be the same persons whose names are subscribed to the foregoing instrument of writing as parties thereto, and acknowledged that they executed the same for the uses and purposes therein mentioned.

And the said Elizabeth B. Smith being by me first examined separate and apart from her husband and made acquainted with the contents of the said instrument, acknowledged that

she executed the same and relinquished her dower in the real estate therein mentioned freely and without fear, compulsion or undue influence of her said husband.

At the December term, 1873, of the common pleas court of Ray county (a court created in 1867, having concurrent jurisdiction with the circuit court in civil cases, Laws 1867, p. 95) Adam K. Reyburn brought a suit against John H. Smith and Elizabeth Smith, his wife, David H. Quesenberry, her trustee, and Mary L. Smith, Harvey Smith, Ada Smith, and Wade Wall, to subject the land here in controversy to the payment of a debt claimed to be due by John Henry Smith to said Reyburn. The court found that the deed of March 5, 1870, made by said John Henry Smith and his wife, Elizabeth B. Smith, to David H. Quesenberry as trustee, had been fraudulently made by said Smith while insolvent and unable to pay his debts, and there being no other property of the said Smith out of which said debt could be paid, said Gunnell land was held subject to the payment of said claim.

Under this judgment the southwest quarter of the northeast quarter, and the southeast quarter of the northwest quarter of section twenty, township fifty-two, range twenty-seven, were sold to satisfy Reyburn's claim against the said John Henry Smith.

The carving out and sale of the said eighty acres from the original Wm. M. Gunnell tract left, therefore, three hundred and twenty acres.

At the February term, 1876, of the circuit court of Ray County, two years after the death of John Henry Smith, Elizabeth B. Smith, with the plaintiffs, and the defendant Mary L., together with Harvey Smith, and David H. Quesenberry, as trustee for the parties named in the trustee's deed of March 5, 1870, and John W. Shotwell, as guardian for Robert E. Gunnell, who had since become insane, instituted an *ex parte* proceeding in said court, the purpose being to partition the Gun-

nell land and set apart the interest of said Robert E. Gunnell therein. The formal procedure required by law was pursued, resulting in a judgment in partition, under which on the 10th day of April, 1876, the following described land was set off and assigned to Robert E. Gunnell as his full share and interest in said Gunnell land, to-wit: Fifty-two acres off of the west side of the east half of the southwest quarter of section seventeen, in township fifty-two, range twenty-seven, and to David H. Quesenberry, trustee for Elizabeth B. Smith, Ada Smith, Mary L. Smith and Harvey Smith the southeast quarter, and the east half of the southwest quarter, except fifty-two acres off of the west side thereof, in section seventeen, and the northeast quarter of the northwest quarter, and the northwest quarter of the northeast quarter, of section twenty, township fifty-two, range twenty-seven.

This proceeding, after the setting apart of the fifty-two acres to Robert E. Gunnell, left two hundred and sixty-eight acres of the original Wm. M. Gunnell tract, being the property described in the petition filed herein.

*Errors Assigned.* The plaintiffs as appellants assign error in the trial court in declaring the title acquired by John H. Smith from Wm. H. Gunnell by the deed of October, 1866, to be held in trust for Elizabeth B. Smith during her life and then to her bodily heirs.

The defendants as appellants assign error in that the necessary persons to a complete determination of the issues involved were not made parties; that the issues should have been submitted to a jury; that plaintiffs' cause of action, if any they had, was barred by the Statute of Limitations; that the sheriff's deed purporting to convey the interest of John C. Gunnell to John H. Smith was inoperative and void; that the deed of March 5, 1870, of John Henry Smith and wife to David H. Quesenberry, as trustee, was not intended to and did not convey the estate either in fee or for

life, of said Elizabeth B. Smith in said land; that the record and judgment in the *ex parte* partition suit to set off Robert E.'s share in the Gunnell land was not regularly commenced ·or legally prosecuted, that the proceedings therein were irregular and the admission of same in evidence for the purpose of showing that Elizabeth B. Smith had by the deed of March 5, 1870, conveyed or intended to convey her interest in fee or for life, in the Gunnell land, to David H. Quesenberry, trustee, was error; that plaintiffs are estopped from claiming any right, title or interest in said land.

I. *Defect of Parties.* Defendants contend that there is a defect of parties. One witness testified that Nathaniel H. Gunnell, Sr., by his second marriage had one daughter who is still living, who has not been made a party hereto. A careful analysis of the testimony shows that the witness was uncertain as to whether the daughter referred to was by the first ,or second marriage. In our opinion, the evidence in this regard is not sufficiently certain and cogent to base a conclusion thereon that the daughter referred to, if of the second marriage, was still living, especially in view of the witness's statement that the daughter he had reference to resided near Richmond when the case was on trial. It is not material that there may be five children of Thomas P. Gunnell now living, and that Wm. H. Gunnell may have left a widow and one son each now living, as both Thomas P. Gunnell and Wm. H. Gunnell have long since transferred by deeds, the regularity of which is not in question, their entire interests in the Gunnell land. We are, therefore, of the opinion that there is no substantial evidence to sustain the contention that there is a defect of parties who should have been joined in this proceeding.

II. *Right to Jury.* Defendants further contend that, although they set up equitable defenses to the petition, they were nevertheless entitled to a jury,

because they asked no affirmative relief. The general application of this rule is not questioned, but is it applicable in a case of this character? Plaintiffs bring their action under section 650, Revised Statutes 1899, now section 2535, Revised Statutes 1909, praying that the title to the land described in their petition be ascertained and determined. Defendants claiming title are in possession. In an action of this character it becomes the duty of the court to ascertain and determine the title and interest of the parties respectively in the real estate in question, and to adjudge the title of the parties to such real estate. While it has been held by this court that the trial of title under the section referred to is for the court and not for the jury (Stone v. Perkins, 217 Mo. l. c. 601, 602) this rule is subject to modifications dependent upon the allegations of the pleadings in the particular suit. The rule announced by the court in Stone v. Perkins, supra, was not directly in regard to the right to a jury, but was incidental and referred to the question as to whether or not in a review of the case, the declarations of law given by the trial court should be considered as in a law case or disregarded as in a proceeding in equity. The true rule by which suits to ascertain and determine title to land under the section referred to, are to be tried, is declared in Lee v. Conran, 213 Mo. 404, in which Woodson, J., speaking for the court says: "If the issues joined entitle the parties to an ordinary judgment at law, then . . . the parties are entitled to a trial by a jury; but if the issues tendered are equitable in their nature and call for equitable relief, the cause is triable before the chancellor." In Minor v. Burton, 228 Mo. 558, Graves, J., speaking for the court in discussing this particular question, says: "It was for a time a mooted question as to whether or not an action under section 650 was an action in equity or at law, but we finally determined the question in the recent case of Lee v. Conran, 213 Mo. 404. In that

case we concluded that the character of the suit was
dependent upon the issues raised by the pleadings. If
the issues thus raised are such as at the adoption of
our Constitution were triable before a jury, then the
parties in an action under section 650 are entitled to
a jury, but if the issues raised by the pleadings were
not triable before a jury prior to the adoption of the
Constitution then the parties are not entitled to a jury.
The action given by section 650 is statutory, and we
think the construction given in the Lee case, supra, is
a reasonable one.'' In the case at bar there are at least
two clear grounds of equitable jurisdiction set up in
the answer; the first, to defeat an apparent legal title
charged in the petition, the defendants asking the
court to declare a resulting trust to have been created
by reason of the facts pleaded; and, the second, to
defeat an apparent legal title charged in the petition,
the defendants pleading estoppel by acts *in pais*. The
defendants, therefore, while not in so many words ask-
ing affirmative equitable relief, invoke equitable de-
fenses to defeat a legal action, which, for all practi-
cal purposes, is a request for an adjudication of the
equities pleaded. Under this state of the pleadings a
jury. was rightfully refused.

III. *Statute of Limitations.* The plea of the Stat-
ute of Limitations is interposed as a defense. Eliza-
beth B. Smith was in possession of this property from
1873 to 1907, the date of her death. Before the execu-
tion of the deed by Elizabeth B. and her husband, John
H. Smith, to Quesenberry, as trustee, March 5, 1870,
she held title in the Gunnell land in fee and for life, her
interests being in the proportion of eleven forty-
eights in fee and nineteen forty-eights for life. These
interests being undivided and severable only by judi-
cial action, which had not occurred, her holding as a
life tenant, although but partial, was sufficient to pre-
vent the running of the statute under the rule that dur-

ing the tenure of the life tenant an action by the remainderman is not authorized. If said deed did not operate to convey her interest in trust, then the same rule would apply as before the execution of same. If the execution of said deed be held to have conveyed her interest for the trust expressed, only her life estate would be left, which could not and was not attempted to be affected by the deed. Under either view of the case, we are of the opinion that the general rule is applicable, and that neither she nor any grantee of the estate could claim adversely to the remaindermen, and that the Statute of Limitations did not begin to run against them until her death. (Waddle v. Frazier, 245 Mo. 391, 404; Bradley v. Goff, 243 Mo. 95), which occurred within three years next before the commencement of this suit.

Ada Hauser, however, is the only plaintiff who can be classed as a remainderman, and hence within the terms of the rule above stated, the others claiming under the deeds to their father John H. Smith, the one from the sheriff of Ray county in 1868 conveying the interest of John C. Gunnell, and the other from Wm. H. Gunnell in 1866 conveying the interest inherited from his father James N. Gunnell.

Whatever interest was acquired in said land by John H. Smith under these deeds, vested in his heirs upon his death, which occurred in 1874, provided he was at the time seized of said interest. We find, however, that on March 5, 1870, he and his wife, by their certain deed, heretofore referred to, conveyed all of their right, title and interest in said Gunnell land to David H. Quesenberry as trustee for the sole and separate use of Elizabeth B. Smith during the period of her natural life, and at her death the same to pass to and vest in fee simple in her two children, Mary L. Smith and Harvey Smith, and Ada Smith, a daughter of said John Henry Smith by a former wife.

It is not material as affecting the rights of the parties to this suit that in a proceeding in equity instituted in the circuit court of Ray county in 1873, this deed was set aside as to creditors of said John H. Smith, on the ground that it was fraudulently made and executed on the part of said Smith, nor does it concern us in determining the issues here that from the findings of said judgment it does not appear that said Smith then had such an equitable interest in said land as to authorize said judgment and the consequent carving of eighty acres out of the Gunnell land and its sale to satisfy the judgment thus rendered. Such land is not included in this proceeding. The judgment was as to creditors and does not affect the parties hereto. As to them, equity will leave them where they have placed themselves so far as the deed of March 5, 1870, is concerned (Hall v. Callahan, 66 Mo. 316, 323; Crook v. Tull, 111 Mo. 283; Knapp v. Knapp, 118 Mo. App. l. c. 705 et seq.), and unless there are more potent and pertinent reasons than the facts disclosed in the above proceeding, this deed will be held to have conveyed the interests of John H. Smith and wife to said land for the purposes therein mentioned. This conclusion will foreclose whatever interest the plaintiffs claim in the Gunnell lands under the said deeds to their father, and hence the Statute of Limitations as applicable to their interests in this regard is a negligible quantity. We will discuss later whether John H. Smith had any interest in said land subject to conveyance.

IV. *Sheriff's Deed to John H. Smith.* The validity of the deed of the sheriff of Ray county, dated March 10, 1868, purporting to convey the interest of John C. Gunnell in the lands in question to John H. Smith, is challenged. It will be recalled that John C. Gunnell went to California not later than 1855, and did not return until sometime in the 80's, not later than 1889. In December, 1865, more than ten years after

his departure, John H. Smith instituted a suit in the circuit court of Ray county, against John C. Gunnell, by attachment, alleging that the latter was indebted to him in the sum of $480. The only service of process on the defendant, John C. Gunnell, was by publication. Under the law then in force, applicable to cases of this character (Sec. 23, chap. 12, vol. 1, p. 246, R. S. 1855) it was required that orders of publication should not only state the nature and amount of plaintiff's demand or damages claimed, but that the defendant should be notified that his property *had been attached*. This last requirement as to notice is not only absent from the order of publication, but it is not mentioned in either the proof of same or in the interlocutory judgment. Nor are any words of similar import used in the order "that his property was about to be attached" held to be sufficient in Harris v. Grodner, 42 Mo. 159, to notify the defendant of the attachment.

The statement in orders of publication that property *had been attached* as required by the statute of 1855, was held to be necessary to jurisdiction in Durossett v. Hale, 38 Mo. l. c. 348, in which Holmes, J., speaking for the court, says: "In respect of the notification, the Attachment Act differs from the General Practice Act. It supposes that there may be no personal or other service on the defendant himself, and that the proceeding may be wholly *in rem* against the property attached. In such case, this is the very thing of which he should have notice, that he may appear and protect his property from sale. But it is enough that the statute expressly requires this fact to be stated in the order of publication, and there is no room for any other construction. It follows that this publication was of no avail whatever, and that the judgment, being rendered against a party who had no notice, was entirely void."

In Walter v. Scofield, 167 Mo. 537, l. c. 556, Marshall, J., speaking for the court in reference to the

correctness of the rule announced in Durossett v. Hale, supra, said: "Nothing was said in the publication, as the statute required, to the effect 'that his property had been attached.' It was properly held that the notice by publication was fatally defective and the judgment based thereon void." In the absence, therefore, from the order of publication of the statement that defendant's property had been attached or words of similar import, conveying to him information as to the nature of the action, the order simply served to constructively notify him of the commencement of an ordinary suit on an account. This, as is clearly shown by the foregoing authorities, was wholly insufficient to confer jurisdiction on the trial court, and its judgment was consequently void, and John H. Smith acquired no title to the interest of John C. Gunnell in the lands in question through his purchase and the sheriff's deed. [Stanton v. Thompson, 234 Mo. l. c. 14.] Nor will the defense avail in behalf of this deed that the judgment under which it was executed is immune from collateral attack; that the rule thus announced states generally a correct declaration of law, we admit; but when a court proceeds to render a judgment in conformity with a statute authorizing a particular proceeding unknown to the common law, though it be a court of general jurisdiction and be a proceeding in accordance with the course of the common law, so far as it is applicable to the statutory proceeding, yet the judgment must conform to the requirements of the statute under the authority of which alone it is rendered when the requirements of the statute are mandatory and the points are essential. [Cooper v. Gunter, 215 Mo. l. c. 562.]

V.  *John C. Gunnell's Estate.*  In this connection the final devolution of the estate of John C. Gunnell may well be determined. It remained in him until his death in 1900, when it passed by descent to his sister

Elizabeth B. Smith in fee, and upon her death became vested in her sole surviving heir the defendant Mary L. Murray.

VI. *Validity of Deed to Trustee.* Notwithstanding our conclusion heretofore indicated as to the validity of the deed of March 5, 1870, from John H. Smith and wife, Elizabeth B., to David Quesenberry, trustee, it becomes necessary under the assignment of errors to particularly consider same.

The law governing the conveyance of a married woman's land in force at the time of the execution of this deed was as follows:

"A husband and wife may convey the real estate of the wife, and the wife may relinquish her dower in the real estate of the husband, by their joint deed, acknowledged and certified as herein provided, but no covenant expressed or implied in such deed shall bind the wife or the heirs, except so far as may be necessary effectually to convey from her and her heirs all right, title and interest expressed to be conveyed therein." [Sec. 2, chap. 109, p. 444, G. S. 1865.]

Under section 14 of the same statute, page 445, it is required that the certificate of ackowledgment shall state (1) the fact of the acknowledgment, (2) personal knowledge by the officer taking the acknowledgment of the grantor and that he is the person whose name is subcribed to the instrument as a party thereto, (3) when the acknowledgment is that of a married woman that she was made acquainted with the contents of said instrument, and on an examination separate and apart from her husband acknowledged that she executed the same freely and without compulsion or undue influence of her husband.

It is contended that the certificate of acknowledgment to this deed fails to conform to the requirements of the above statute. The certificate (set out *in haec verba* in the statement) provides substantially that

John H. Smith and Elizabeth B., his wife, personally came before the notary taking the acknowledgment, and that they were personally known to him to be the same persons whose names are subscribed to the instrument as parties thereto, and acknowledged that they executed the same for the uses and purposes therein mentioned. And that the said Elizabeth B. Smith being first examined separate and apart from her husband and made acquainted with the contents of the said instrument, acknowledged that she executed the same and relinquished her dower in the real estate therein mentioned freely and without fear, compulsion or undue influence of her said husband.

A careful comparison of this certificate with the statute does not disclose in what particular the former fails to conform to the material requirements of the latter. The deed, therefore, so far as the acknowledgment is concerned, must be held to be valid. This conclusion is, in our opinion, evident from inspection, and the citation of authorities sustaining deeds having like certificates of acknowledgment would tend rather to obscure than illuminate the question. We have examined the cases cited by industrious counsel in opposition to this conclusion, but do not find them applicable.

As to the deed itself, it is in no sense ambiguous, and from its phraseology must have been drawn by a skilled draftsman in conveyancing. The facts that John H. Smith owned or claimed to own certain interests in the land and was insolvent and involved in pecuniary difficulties, and that his wife, Elizabeth B., owned certain interests therein in fee and others for life, with the remainder in her bodily heirs, does not in the face of the instrument's perspicuity demand that we look elsewhere than within its four corners for its interpretation. Therefore, as to whose deed it was and what estate it conveyed, it is its own best expositor. The deed was signed by both parties and

acknowledged, as we have shown, in conformity with the statute then in force. A reference to section 2, supra, shows that the same method was then required for conveying a wife's real estate as for relinquishing her dower. The scrivener who drew the deed knew that her signature to same was not necessary simply to pass her dower, since, under the terms of the deed, she would still have a life estate of which she could be divested only by execution and delivery of her own deed along with the trustee. As further evidence that it was intended to be the deed of both, and to convey whatever interests either had in said land, subject to transfer by them, witness its terms: "Know all men by these presents that *we,* John H. Smith and Elizabeth Smith, his wife, in consideration," etc., etc., "do grant, bargain and sell unto David H. Quesenberry trustee," etc.; and further: "It is hereby agreed by and between *the parties* hereto," etc.; and still further: "It is the intention and understanding of *the parties* hereto," etc. In fact, the entire instrument bears the impress of joint action except in the warranting clause in which John H. Smith's name appears alone. Here we have another evidence of the discernment of the scrivener, for inasmuch as no covenants of warranty could, under the law then in force (G. S. 1865, p. 444, sec. 2), avail against the wife, Elizabeth B., even as to her own property, the omission of her name from the warranting clause is of no significance other than to emphasize the intelligence with which the deed was drawn. This deed is so unmistakable in its terms that it would profit nothing to review the circumstances under which it was made to determine its nature and purpose. If tempted to do so, we might be led to inquire if the deed was not intended as the joint conveyance of said Smith and wife of the land described for the purposes therein set forth, what moving cause would have prompted her to simply join therein to relinquish her dower when by the deed it-

self she was retaining a life estate; and her dower being inchoate, no matter how deeply involved in debt her husband may have been, her interest in this respect could not have been levied upon to satisfy the demands of his creditors; nor will we be led into a discussion as to whether or not her lands were subject to levy and sale under the law then in force to satisfy her husband's debts contracted after coverture. As we have said, the definite terms of the deed render these excursions into the field of speculation unnecessary. Our conclusion is, therefore, that the instrument is the joint deed of the grantors therein to the trustee, with a reservation for life in Elizabeth B. Smith, coupled with her right of disposal of said lands along with the trustee, remainders in fee in equal parts to her children Mary L. and Harvey, and her husband's child, Ada, by a former marriage. It will scarcely be necessary to say that this conveyance is only effective to convey Elizabeth B's interest in fee (which at the time of the transfer was eleven forty-eighths) in the Gunnell lands and the remainders thereby created must, as a consequence, be limited to this interest.

VII. *Deed of W. H. Gunnell to John H. Smith.* It is contended that the consideration paid by John H. Smith to Wm. H. Gunnell for the latter's interest in the Gunnell land, evidenced by the deed of October, 1866, consisted of property belonging to the estate of Nathaniel H. Gunnell, Jr., held by said Smith as administrator of said estate, and, consequently, that the interest in the land so acquired was held in trust by said Smith for his wife, Elizabeth B., who thereby became the equitable owner of same for life, and upon her death said land descended in fee to her sole surviving heir, Mary L. Murray.

At the time of the purchase of the Wm. H. Gunnell interest, John H. Smith was insolvent and sorely pressed by creditors. There is no evidence that he

had other property than that belonging to the Nathaniel H. Gunnell estate. He never accounted for this property in any settlement as administrator. There was testimony that he exchanged two horses for the interest in question; he admitted as much to the witness Duvall, adding that "they belonged to Nat's estate." Having neither money, property nor credit, at the time, the evidence is convincing, if not well nigh conclusive, that the two horses exchanged by him for this interest belonged to the Nathaniel H. Gunnell estate, in all of which his wife had a life estate with remainder in her bodily heirs.

The date (1866) of the deed from Wm. H. Gunnell to John H. Smith and the death of the latter in 1874, prior to the adoption of the Married Woman's Act in 1875, render a resort to the common law necessary to determine John H. Smith's rights in his wife's property at that time.

Notwithstanding the wife's equitable ownership in the property derived from the estate of Nathaniel H. Gunnell, Jr., there could be, while the husband occupied the position of administrator of said estate and held the property as a part of the assets of same, no such reduction to possession by him as to vest the ownership of said property in him. Possession by the husband as an executor or administrator, trustee or agent, and not in the exercise of his marital rights, will not constitute such a reduction to possession as to vest the ownership of the property in the husband. [4 Kent (8 Ed.), 114; 15 Am. & Eng. Ency. Law, p. 827, and cases.] Possession by a husband of the wife's chattels or choses in action, to vest ownership in the former must be in right and by virtue of the marital relation. Control of the wife's property by the husband in the capacity of a trustee is not sufficient, for here he has a trust to administer and acts in his representative capacity rather than in the exercise of his marital rights. [Keagy v. Trout, 85 Va. 390, 400;

Barron v. Barron, 24 Vt. 375, 391; Rodgers, Dom. Rel.,
sec. 155, p. 115; 21 Cyc. 1186 and cases.]

The following cases, while not entirely parallel in
their facts with the instant case, contain instructive
rulings which by analogy sustain the doctrine above
announced: Reed Bros. v. Nicholson, 189 Mo. 396,
407; Boynton v. Miller, 144 Mo. 681, 687; Prewitt v.
Prewitt, 188 Mo. l. c. 683; Merket v. Smith, 33 Kan.
66.

We. therefore, hold that John H. Smith held the
interest in the Gunnell land acquired by him from Wm.
H. Gunnell under the deed made in October, 1866, in
trust for his wife, Elizabeth B., remainder in fee to
her bodily heirs, under the terms of the will of Nathan-
iel H. Gunnell, Jr.

VIII. *Partition Proceeding.* The *ex parte* par-
tition proceeding to set apart the interest of Robert
E. Gunnell, an insane person, in the Gunnell land,
while irregular in many respects, was brought in the
names of all the parties who had or claimed an inter-
est in said land, and, although it resulted in the set-
ting apart to Robert E. of twelve more acres than his
numerical distributive share in the entire tract of three
hundred and twenty acres then belonging to said es-
tate, it was the voluntary act of the parties, and they
could have accomplished the same end in a division of
said lands out of court. Under this state of facts, we
are not inclined to entertain technical objections to the
validity of this proceeding. Nor are we impressed
with the contention that the doctrine of estoppel is in
any way applicable to Elizabeth B. Smith on account
of her participation therein. At the time of this pro-
ceeding Elizabeth B. Smith held only a life estate in
the Gunnell land. Under the devise from her brother,
Nathaniel H. Gunnell, Jr., her estate therein was so
limited, and by her joint deed with her husband, March
5, 1870, to the trustee, her estate in fee in said land

was also converted into a life estate. This estate was in no way affected by the partition, and no act of hers could then affect the estates of the remaindermen. A discussion of the partition proceeding may, therefore, be eliminated from consideration.

IX. *Final Devolution of Title.* The foregoing conclusions as determinative of the title and interests to the Gunnell land may be more clearly understood by the following resume:

At the time of the death of Wm. M. Gunnell, in 1857, the tract of land of which he is the common source of title, consisted of 400 acres.

March 5, 1870, John Henry Smith and his wife, Elizabeth B., conveyed whatever interest they had in said land, to a trustee, with reservation for life in and power of disposal by Elizabeth B., remainder in fee to Mary L., Harvey and Ada Smith.

In December, 1873, under a judgment of a creditor of John H. Smith, eighty acres of said land was sold to satisfy said judgment, reducing the tract to 320 acres.

In February, 1876, in an *ex parte* partition proceeding, 52 acres of said land was set apart to Robert E. Gunnell, an insane person, which said land was subsequently sold by his guardian for his support, reducing the tract to 268 acres.

We have apportioned the shares of the parties hereto in said land on the basis of forty-eighths as units of interest, first setting aside the interest of Robert E. Gunnell as one share, or six forty-eighths therein plus twelve acres, this excess being deducted before apportionment, from the other interests.

We find, therefore, at the time of her death Elizabeth B. Gunnell was seized for life of nineteen forty-eighths of said land, by devise from her brother Nathaniel H. Gunnell, Jr., remainder to her bodily heirs. The interests of the remaindermen under this devise

are contingent. [Godman v. Simmons, 113 Mo. 122, 127; Buxton v. Kroeger, 219 Mo. 224, 240; Sullivan v. Garesche, 229 Mo. 496, 505.] Contingent remainders are not descendible (DeLassus v. Gatewood, 71 Mo. 371, 381; Dickerson v. Dickerson, 211 Mo. 483, 493), and Harvey Smith having died in 1894 and his mother Elizabeth B. in 1907, upon her death Mary L. Murray, as her sole surviving bodily heir, became vested in fee with a nineteen forty-eighths interest in said land.

Elizabeth B. as the equitable owner of the one share or six forty-eighths interest of Wm. H. Gunnell, in said land, purchased by her husband with trust funds, became upon the latter's death the owner in fee of said interest which descended upon her death to her sole surviving heir Mary L. Murray.

The sheriff's deed to John H. Smith of the one share or six forty-eighths interest of John C. Gunnell in said land being void, upon said John C's death, his interest descended to his sister Elizabeth B. in fee and upon her death, to Mary L. Murray.

The remainder or eleven forty-eighths interest in said land conveyed by John H. Smith and Elizabeth B., his wife, under the deed of March 5, 1870, to a trustee (reservation in the wife for life with remainder in fee in equal parts to Mary L., Harvey and Ada Smith) created vested estates in these remaindermen, and although Harvey died before his mother, the life tenant, his interest upon her death descended to his heirs. Of this eleven forty-eighths interest, therefore, Mary L. and Ada are each entitled to one-third of same in fee, and the heirs of Harvey are entitled to their distributive portions of his one-third interest in fee in accordance with the Statute of Descents as to the whole and half blood.

The foregoing determination of the interests of the parties hereto results in a finding as to their shares in said land in acres, as follows: to Mary L.

Murray, two hundred and twenty-nine acres; to Ada Hauser, twenty-nine acres; and to David L. and Virginia C. Smith, each five acres.

From which it follows that the judgment of the trial court should be reversed and remanded, with directions to enter a decree vesting the title in the land in question in the parties hereto as determined in this opinion, and it is so ordered. *Brown* and *Faris, JJ.*, concur.